```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION
```

**UNITED STATES OF AMERICA,**

           Plaintiff,

                                    **HONORABLE ARTHUR J. TARNOW**

   v.

                                    **No. 17-20117**

**DIAMANTE FRITTS,**

           Defendant.

_____/


**TRIAL BY JURY**

**Thursday, August 24, 2017**

Appearances:

FOR THE GOVERNMENT:         SUSAN FAIRCHILD, ESQ.
FOR THE DEFENDANT:           CRAIG DALY, ESQ.

                                  -   -   -

*To obtain a certified transcript, contact:*
*Lawrence R. Przybysz, MA, CSR, RPR, RMR, CRR*
*Official Federal Court Reporter*
*Theodore Levin United States Courthouse*
*231 West Lafayette Boulevard, Room 124*
*Detroit, Michigan  48226*
*(313)414-4460.  Lawrence_Przybysz@mied.uscourts.gov*

*Proceedings recorded by mechanical stenography.*
*Transcript produced by computer-aided transcription.*

*Trial by Jury*
*Thursday, August 24, 2017*

# I N D E X

- - -

MOTION HEARING..................................P. 3

*Trial by Jury*
*Thursday, August 24, 2017*

Page 3

1           Detroit, Michigan
2           Thursday, August 24, 2017
3           8:30 a.m.
4                - - -
5      **THE COURT CLERK:** Calling case number 17-20117,
6  United States of America versus Diamante Fritts.
7      **MS. FAIRCHILD:** Good morning, your Honor. Susan
8  Fairchild appearing on behalf of the United States.
9      **MR. GRAVELINE:** Chris Graveline on behalf of the
10 United States as well.
11     **MR. DALY:** Good morning.  Craig Daly on behalf of
12 Mr. Fritts.
13     **THE COURT:** Good morning.  Does anyone have anything
14 to add to the discussion of yesterday?
15     **MR. DALY:** Not to the discussion.
16     **THE COURT:** Then what is your position today?
17     **MR. DALY:** Your Honor, given what happened yesterday,
18 it was intentional, extremely egregious and very prejudicial to
19 Mr. Fritts's right to a fair trial.  We are moving for a
20 mistrial at this time.
21     **THE COURT:** Thank you.  And the Government's
22 response?
23     **MR. GRAVELINE:** Good morning, your Honor.  We oppose
24 the granting of a mistrial.  We do not believe that what
25 occurred yesterday rises to the level a mistrial in this case.

*17-20117; United States of America v. Diamante Fritts*

*Trial by Jury*
*Thursday, August 24, 2017*

Page 4

1  Essentially that there is nothing that can be done by the Court
2  to allow the trial to continue on in fairness to the defendant
3  in this case.  We believe there is.  We believe the Court
4  proposed that yesterday with the curative instruction as well
5  as the order to the Government not to bring up any additional
6  information about -- that can be connected to the search of the
7  defendant's house.
8      **THE COURT:**  Respond to Mr. Daly's allegation that it
9  was intentional.
10     **MR. GRAVELINE:**  Essentially, a reading of the record
11 shows that Ms. Fairchild, when she asked the question, when
12 first approached to the side bar she initially denied even
13 remember asking the question, why did you start crying?
14     **THE COURT:**  Which was about ten minutes prior or
15 less.
16     **MR. GRAVELINE:**  Correct.  And then in terms of
17 intentional, so the intentionality would go towards asking
18 certain questions in order to cause a mistrial.
19     **THE COURT:**  Excuse me.  I know people use it but
20 intentionality is a word that -- the intention is sufficient.
21     **MR. GRAVELINE:**  Okay.  So the question is did she ask
22 these questions with the intention of creating a mistrial?
23 Once again, looking at the record, once the Court proposed a
24 remedy short of mistrial, there was no objection by the
25 Government.  In fact, the Government agreed that was the proper

*Trial by Jury*
*Thursday, August 24, 2017*

Page 5

1  way to go.  If it was Ms. Fairchild's intention to create a
2  mistrial, she would have argued strenuously that a mistrial
3  should have been granted at that point.  I believe that shows
4  she did not have the intention of granting or seeking a
5  mistrial.
6        **THE COURT:**  What was her intention?
7        **MR. GRAVELINE:**  I believe she was attempting to
8  elicit from the witness that she began to cry because she
9  realized that the false alibi she provided for the defendant
10  previously was not true and that she had been caught in that
11  lie.
12        **THE COURT:**  And then what was the purpose of the
13  question eliciting the answer of the pants?
14        **MR. GRAVELINE:**  I don't believe Ms. Fairchild asked
15  that question in hopes of having any answer about the pants.
16  She was hoping to say that this witness who has been hostile
17  towards the Government from the beginning in this case --
18        **THE COURT:**  Let me interrupt again.  I am looking at
19  page three of the transcript of yesterday, lines 15 to 25.
20  Question, at some point during the interview with -- and then
21  skipping some, Agent Nevala, did you start to cry?  Answer,
22  yes.  Why?  He showed me a pair of pants that I recognized.
23     Now, what you said so far is consistent with maybe she is
24  surprised, just from reading this record.  Then the next
25  question is, recognize his belonging to somebody?  Yes.

*17-20117; United States of America v. Diamante Fritts*

*Trial by Jury*
*Thursday, August 24, 2017*

Page 6

1  Belonging to who?  Defendant, Diamante.  At some point did you
2  suspect that Mr. Fritts was involved in the robbery?  And
3  that's where we had the side bar I believe or shortly
4  thereafter.  But eliciting who the pants belonged to was
5  intentional.  I don't think I have to find that the intention
6  was to cause a mistrial.  I think the question is, was it an
7  intentional violation of the promises made at least three times
8  on August 15th that these pants and anything else seized
9  illegally would not be referred to do at trial.
10      And I know there is not a whole lot of precedent because
11  of various reasons in terms of intention.  And intention -- and
12  let me correct something you have been saying.  I gave the
13  defense the choice of asking for a mistrial or continuing with
14  an instruction or the third choice was continuing without an
15  instruction because I think we all recognize that an
16  instruction in some cases just highlights the prejudicial
17  material and the jurors will start thinking, why are they
18  focusing on that?  And it exacerbates the error.
19      And I have done this in other cases and the one actually
20  went to the Sixth Circuit where I gave the attorney the choice
21  and they chose to craft their own instructions and the Sixth
22  Circuit said that was okay.  That cured the error.  But I
23  certainly did not and would not on my own think that the
24  instruction cured the error unless the defense attorney thought
25  it did or for strategic reasons, that is, the trial was going

*17-20117; United States of America v. Diamante Fritts*

*Trial by Jury*
*Thursday, August 24, 2017*

Page 7

1   so well they didn't want a mistrial.  This was very early on in
2   the trial.  And as Mr. Daly read into the record this
3   information about what she said to the officer was in a
4   statement that was given to the agent and was referred to and
5   used in an attempt to impeach the witness about her statement.
6       So it's clear that she knew, even though at side bar --
7   well, at side bar she repeated that she had read the statements
8   which was her method of explaining why she was surprised before
9   she realized or remembered what she had done and she was
10  surprised because she said she never interviewed the witness
11  before trial which I find unusual.  What else do you have to
12  say?
13          **MR. GRAVELINE:**  Well, I think the question today is,
14  is there anything that can be done to -- short of a mistrial in
15  this particular case?  So I believe that the issue before the
16  Court today is, should you grant a mistrial or is a curative
17  instruction and other remedies available to the Court to
18  continue the trial today?
19      In terms of the intentionality, I don't believe that issue
20  necessarily is ripe until -- unless and until --
21          **THE COURT:**  Are you suggesting that we have an
22  Evidentiary Hearing on the intention of the Prosecutor?  I
23  don't think so.
24          **MR. GRAVELINE:**  Well, what I am suggesting is --
25          **THE COURT:**  When does it become ripe?

*17-20117; United States of America v. Diamante Fritts*

*Trial by Jury*
*Thursday, August 24, 2017*

Page 8

1     **MR. GRAVELINE:** When the Government would refile the
2 charges and the charges would be brought back to the Court at
3 that time. And at that point we would have both this
4 transcript. We would have the other transcript.
5     **THE COURT:** We do have the other transcript, but go
6 on.
7     **MR. GRAVELINE:** I'm sorry.
8     **THE COURT:** I don't think you have it but I have
9 looked at it. And while I am much older than most people in
10 the room, I do remember all way back to August 15th which was a
11 week ago and a couple days when I asked at the beginning of the
12 hearing, in the the middle of the hearing, and at the end of
13 the hearing, are you going use any of this material? And I was
14 assured it was not the Government's intentionality to do that.
15     **MR. GRAVELINE:** Understood, your Honor.
16     **THE COURT:** What would be presented to me then that
17 hasn't been presented to me now?
18     **MR. GRAVELINE:** I believe we could also have a brief
19 that puts into context where this falls in the line of other
20 cases of either intentionality -- intention has been found in
21 other cases. We can -- and also show -- I believe just in the
22 conversation that we are having right now, you mentioned that
23 at side bar, that when Ms. Fairchild went up --
24     **THE COURT:** And, incidentally, that side bar is part
25 of the transcript you have.

*17-20117; United States of America v. Diamante Fritts*

*Trial by Jury*
*Thursday, August 24, 2017*

Page 9

1       **MR. GRAVELINE:**  Correct.

2       **THE COURT:**  Okay.

3       **MR. GRAVELINE:**  And the Court just mentioned how it
4 seemed that Ms. Fairchild at that point remembered or was
5 surprised about being reminded about the 302 and the specific
6 line that Mr. Daly was citing to, which, once again, I think
7 cuts against a finding of intention at that point.  When
8 talking about intention, one has to look at why would the
9 Government want a mistrial in this case?  I don't believe Mr.
10 Daly has enunciated why Ms. Fairchild would have the intention
11 to create a situation where a mistrial would be the only
12 remedy.

13       **THE COURT:**  What if the intention were to enhance the
14 chances for a conviction?

15       **MR. GRAVELIN:**  How so, your Honor?

16       **THE COURT:**  By telling the jury what happened during
17 the statement and about the pants.  Doesn't that enhance the
18 Government's case?  Especially in a case where there were only
19 two eyewitnesses and they can only identify him by his voice?
20 I mean, what do you mean, how so?

21       **MR. GRAVELINE:**  In the sense of -- so -- and I think
22 this is where --

23       **THE COURT:**  I don't think that it's necessary to show
24 that she had -- that the Prosecutor had the intent to cause a
25 mistrial.  I think the intent was to introduce the evidence

*17-20117; United States of America v. Diamante Fritts*

*Trial by Jury*
*Thursday, August 24, 2017*

Page 10

1  which was unconstitutionally obtained with the intent of making
2  it more likely that there would be a conviction.  I mean, I
3  don't think anybody at this early stage of a trial would
4  necessarily think -- well, I don't know.  I haven't been in
5  their shoes.  But maybe it was going bad because the witness
6  did not testify the way she had in the statement.  She didn't
7  say the same things, and, therefore, it was going bad for the
8  Government.  And I don't think it matters.  I don't think it's
9  a specific intent to cause a mistrial as a standard.  I think
10 the intent is to violate the rules.  And as we know under the
11 United States Supreme Court case in Berger versus United States
12 that it's the Government's job to ensure a fair trial, not to
13 ensure convictions.
14         **MR. GRAVELIN:**  I agree with that, your Honor. But I
15 do believe, and this might be one of those other reasons why
16 this is not ripe -- the cases that I read, the standard that I
17 reviewed was, misconduct at issue has to be intentionally
18 committed by the Prosecutor for the purposes of creating a
19 mistrial.  That would be the finding that the Court would make
20 in order to not allow -- that double jeopardy has not attached.
21 It is a specific intent that what we are talking about here and
22 what we are talking about here are these three questions done
23 with the intent to create a mistrial.
24         **THE COURT:**  You are conceding that a mistrial should
25 be granted but you are arguing that it should not be granted

*Trial by Jury*
*Thursday, August 24, 2017*

Page 11

1  with prejudice.
2        **MR. GRAVELINE:**  I am not conceding a mistrial should
3  be granted.  I believe error has occurred that the Government
4  did.  I'm not arguing that those questions right there from,
5  why, through, recognize as belonging to somebody and belonging
6  to who, those are clearly questions that should not have been
7  asked.  I am conceding that.  What I am saying is that we
8  believe there are curative measures that the Court can take
9  short of a mistrial that can cure those three questions.  If,
10 however, the Court does not believe those curative measures can
11 be taken and that a mistrial should be granted at this
12 juncture, we are arguing that the next question in terms of
13 finding of intent or meeting the burden of were these three
14 questions asked with the intent to create a mistrial should
15 then be put off to another day when we've refiled the charges.
16       **THE COURT:**  So far in answer to my question of what
17 would be presented to me then that hasn't been presented to me
18 now is a brief on the law as opposed to any facts that are not
19 before me now.
20       **MR. GRAVELINE:**  That's correct.  I believe the Court
21 has the facts in front of you.  However, I think the law just
22 as we have been discussing over the last several minutes, the
23 standard, knowing the standard and how to apply those facts to
24 that standard is very important before the Court makes a
25 particular finding as to what any type of intent was.  I don't

*17-20117; United States of America v. Diamante Fritts*

*Trial by Jury*
*Thursday, August 24, 2017*

Page 12

1  believe you need to find intent if you believe that there is no
2  curative remedy short of a mistrial.  At this point, I believe
3  all the Court needs to do, if that is the Court's belief, is
4  just to grant the mistrial and then we can brief both the law,
5  the standard, and how those facts which the Court knows applies
6  to those standards.
7      **THE COURT:**  Mr. Daly, your response?
8      **MR. DALY:**  Judge, there are -- Mr. Gravelin is
9  combining two separate issues.  The question of mistrial is the
10 only issues before you at this point.
11     **THE COURT:**  That's not -- to the extent that he's
12 addressing whether it's with prejudice or without prejudice is
13 before me today right now.
14     **MR. DALY:**  Okay.
15     **THE COURT:**  So that -- your statement is too limited.
16 So go on.  Do you have any difference in statement of law in
17 terms of the intention of the Prosecutor?
18     **MR. DALY:**  Yes.  If you look at Oregon versus
19 Kennedy, the language is actually --
20     **THE COURT:**  Why don't you give us the rest of the
21 cite?
22     **MR. DALY:**  456 US 667.  This is addressing the issue
23 of a mistrial goaded by the Government that precluded a
24 subsequent trial on double jeopardy issues.  And it says,
25 quote, retrial is barred where the error that prompted the

*17-20117; United States of America v. Diamante Fritts*

*Trial by Jury*
*Thursday, August 24, 2017*

Page 13

1   mistrial is intended to provoke a mistrial or, in the
2   alternative, is, quote, motivated by bad faith or undertaken to
3   harass or prejudice the defendant.  So the standard is broader
4   than just intention.
5       We can meet, easily meet the bad faith and prejudicial
6   requirement but we can also meet the intentional requirement
7   because what happened initially was when Ms. Fairchild was
8   questioning the witness, she had the 302 in her presence.  She
9   was aware of what the 302 said.
10           **THE COURT:**  When you say in her presence, it was in
11  her hand?
12           **MR. DALY:**  Yes.
13           **THE COURT:**  Go on.  You don't have to read it in the
14  record again.  You may if you want.
15           **MR. DALY:**  I don't intend to read it back into the
16  record.  But that 302 made it absolutely clear that the only --
17  the one and only reason the witness cried was because the agent
18  had showed her the pants and that she recognized those pants as
19  belonging to Mr. Fritts.  There is absolutely no other reason
20  for the questions that she asked when she said at some point
21  during the interview, did you start to cry?  And she knew what
22  the answer was going to be.  And the answer to the question
23  that she asked was open ended.  Why?  And the witness said, he
24  showed me a pair of pants that I recognized.  And she didn't
25  stop there.  She kept going because she knew what the answer

*17-20117; United States of America v. Diamante Fritts*

*Trial by Jury*
*Thursday, August 24, 2017*

Page 14

1  was going to be and she knew as you pointed out that her case
2  was thin to the extent that they had no physical evidence that
3  would connect Mr. Fritts to the robbery. They only had the
4  testimony of two witnesses and the robber was wearing a mask so
5  they couldn't see his face and it was based on voice.
6  　　　She heard my Opening Statement where I said to the jury
7  that this was a case of misidentification and that there was no
8  evidence that was taken from the scene, physical evidence that
9  could connect him to the crime. So after she does this, which
10 is clearly intentional, not by mistake whatsoever, and she had
11 asked the question, why, the next thing she did after
12 intentionally violating her agreement, she misrepresented to
13 you at side bar what had just happened because she said in
14 response to what was happening on the top of page five -- I
15 said, quote, then you asked her why, and Ms. Fairchild says,
16 quote, I didn't ask her, why? So we have the intentional act.
17 Then we have her misrepresenting what she did. And then as you
18 recall yesterday when I tried to read into the record what she
19 knew that was in the report, she tried to stop me. And she
20 objected saying that it was hearsay. And when I read the first
21 sentence she interrupted me again.
22 　　　So when we look at the totality of what happened we have
23 an intentional violation. We have her misrepresenting what she
24 just did. And then we have what, in my mind, represents an
25 attempt to cover it up, to keep me from putting into the record

*Trial by Jury*
*Thursday, August 24, 2017*

Page 15

1   what happened. And I think when you put all those pieces
2   together it shows something different than what Mr. Gravelin is
3   suggesting, that she was surprised by this. She wasn't.
4   Judge, that's all I have.
5          **THE COURT:** All right. Any last words, Mr. Gravelin?
6          **MR. GRAVELINE:** No, your Honor.
7          **THE COURT:** All right. Mr. Daly, you reminded me
8   with the hearsay objection that at least on one, maybe two or
9   three occasions, when you had objected for hearsay and I had
10  sustained the objection, the Prosecutor repeated in an attempt
11  to elicit the same hearsay which I think is consistent with not
12  following the rules. But, more importantly, is not following
13  the promises and the rules concerning the pants.
14      And I am finding that it was deliberate and that the
15  intention was -- showed both bad faith which the Oregon case
16  gives as an alternative, and I can conclude, recognizing what
17  Mr. Gravelin says is part of the law, that it has to be
18  intentional for the purpose of eliciting a mistrial and it has
19  to be an error that cannot be corrected by anything short of a
20  mistrial, that this error satisfied both prongs and there is
21  nothing that I could do without the approval of the defendant
22  which would affectively be a waiver to correct the error
23  because you can't tell people to disregard what may have turned
24  out to be the most prejudicial part of this case, prejudicial
25  in terms of showing the defendant's involvement.

*17-20117; United States of America v. Diamante Fritts*

*Trial by Jury*
*Thursday, August 24, 2017*

Page 16

1  And, therefore, I am granting the mistrial and I am
2  granting it with prejudice, which means I don't have to wait,
3  Mr. Gravelin, to see your brief.  I think you have adequately
4  presented your position as to what the intention must be.  And
5  I am finding that there was that intention and it doesn't --
6  that is not the only basis -- that also it is deliberate and in
7  bad faith.  And therefore, this case is over.  Case dismissed.
8  We are in recess.  And I would instruct the marshals that when
9  you take him back, let him get his things and he's free to go.
10         **COURT OFFICER:**  Yes, your Honor.
11                          -   -   -

*17-20117; United States of America v. Diamante Fritts*

**C E R T I F I C A T I O N**

I, Lawrence R. Przybysz, official court reporter for the United States District Court, Eastern District of Michigan, Southern Division, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a correct transcript of the proceedings in the above-entitled cause on the date hereinbefore set forth.

I do further certify that the foregoing transcript has been prepared by me or under my direction.


s/Lawrence R. Przybysz
Official Court Reporter

- - -